**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**WAYCROSS DIVISION**

| | |
|---|---|
| PATRICIA VICKERS, as Surviving Spouse of JESSIE VICKERS, deceased, and on behalf of the Estate of JESSIE VICKERS,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CARNIVAL CORPORATION,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) CIVIL ACTION NO. CV520-78<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**

**COMES NOW,** Plaintiff Patricia Vickers, as Surviving Spouse of Jessie Vickers, deceased, and on behalf of the Estate of Jessie Vickers, in the above-styled matter, and files this Complaint against Defendant Carnival Corporation, showing the Court as follows:

**I.   PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Patricia Vickers is the wife of Jessie Vickers, deceased. Plaintiff is a citizen and resident of Coffee County, Georgia.

2. Upon information and belief, Defendant Carnival Corporation ("Carnival") is a foreign limited liability company with a principal place of business at 3655 NW 87 Ave., MLGL 815, Miami, FL, 33178, and can be personally served with process through its registered agent, National Registered Agents, Inc., 289 S. Culver Street, Lawrenceville, GA, 30046-4805.

3. This cause of action is based upon the injuries and damages sustained by

Plaintiff's decedent when he contracted COVID 19 a/k/a "corona virus" on Defendant's ship Carnival Ecstasy and subsequently died. Venue is proper under 28 U.S.C. § 1391.

4. This Court has original subject matter jurisdiction under 28 U.S.C. § 1332 because the parties have diverse citizenship and the amount in controversy exceeds $75,000.00.

## II.   FACTUAL ALLEGATIONS

5. Plaintiff renews and reaffirms each and every allegation set forth in paragraphs 1 through 4 above.

6. On or about March 9, 2020, Plaintiff Patricia Vickers and her husband, Jessie Vickers, deceased, boarded the *Ecstasy* cruise ship in Jacksonville, Florida for a four (4) day cruise to the Bahamas ("the Vickers trip").

7. Before the Vickers trip, as of February 2020, Defendant, through its agents, employees and/or personnel knew that passengers on its cruise ships as well as cruise ships operated by other carriers had contracted and potentially infected other passengers and crew members with COVID 19 a/k/a "corona virus".

8. In fact, as of February of 2020, the *Diamond Princess*, one of Defendants' ocean liners, had already had more COVID 19 a/k/a "corona virus" infections than any nation except for China.

9. By March 4, 2020, five (5) days before the Vickers trip, Defendant, through its agents, employees and/or personnel knew that the U.S. Centers for Disease Control had begun investigating a group of COVID 19 a/k/a "corona virus" cases in California that may have been linked to another of its cruise ships, the *Grand Princess*.

10. By March 9, 2020, the same day as the Vickers were to depart, Defendant

had already docked the *Grand Princess* at the Port of Oakland and transported hundreds of the ship's passengers to two (2) military bases in California for a fourteen (14) day quarantine due to concerns about an outbreak of the virus.

11. In light of aforementioned knowledge, Defendant, through its agents, employees and/or personnel knew or had reason to know that some passengers and/or crew which had sailed on the *Ecstasy* before the Vickers' trip likely had or were experiencing symptoms consistent with COVID 19 a/k/a "corona virus" before departing.

12. Despite the aforementioned knowledge, Defendant, through its agents, employees and/or personnel failed to adequately clean and sanitize the *Ecstasy* prior to and/or during the Vickers trip.

13. Despite the aforementioned knowledge, Defendant, through its agents, employees and/or personnel allowed passengers, including Plaintiff and decedent, to board the ship without having adequately cleaned and/or sanitized the *Ecstasy*.

14. Despite the aforementioned knowledge, Defendant, through its agents, employees and/or personnel failed to warn or notify passengers, including Plaintiff and decedent, that some passengers and/or crew which had sailed on the *Ecstasy* before the Vickers' trip likely had COVID 19 a/k/a "corona virus" and that there was a possibility that they could contract the virus while aboard its cruise ship.

15. Prior to boarding said ship, Defendant, through its agents, employees and/or personnel conducted what amounted to essentially no pre-boarding screening and/or evaluation to determine whether any of the cruise ship passengers had or were experiencing symptoms consistent with COVID 19 a/k/a "corona virus".

16. Defendant failed to conduct adequate pre-boarding screening and/or

evaluation to determine whether any of the cruise ship passengers had or were experiencing symptoms consistent with COVID 19 a/k/a "corona virus" despite having knowledge that there had already been outbreaks of the virus on other cruise ships operated by Defendant and other carriers and some passengers and/or crew which had sailed on the *Ecstasy* before the Vickers' trip likely had COVID 19 a/k/a "corona virus".

17. Defendant failed to conduct adequate pre-boarding screening and/or evaluation to determine whether any of the cruise ship passengers had or were experiencing symptoms consistent with COVID 19 a/k/a "corona virus" despite having knowledge that there was a serious risk that its passengers could contract the virus while aboard its cruise ship.

18. Despite the aforementioned knowledge and despite the aforementioned failures, Defendant, through its agents, employees and/or personnel allowed the *Ecstasy* to depart Jacksonville, Florida on March 9, 2020.

19. Defendant allowed the ship to depart knowing that it was risky to do so, in that by then, cruise ships in particular were known virus "hot spots".

20. Throughout the duration of the cruise, no screenings or evaluations were ever performed to determine whether any of the cruise ship passengers had or were experiencing symptoms consistent with COVID 19 a/k/s "corona virus".

21. Throughout the duration of the cruise, passengers, including the Vickers, were encouraged to mingle with other passengers, were encouraged and expected to eat and drink at buffets and bars alongside other passengers, to engage in extracurricular activities with other passengers and to attend performances with other passengers.

22. At no time were any social distancing or shelter in place guidelines,

protocols or mandates instituted on the ship, nor was the ship cleaned or sanitized.

23. Throughout the cruise, Defendant failed to conduct adequate screening and/or evaluation to determine whether any of the cruise ship passengers had or were experiencing symptoms consistent with COVID 19 a/k/a "corona virus" despite having knowledge that there had already been outbreaks of the virus on other cruise ships operated by Defendant and other carriers and some passengers and/or crew which had sailed on the *Ecstasy* before the Vickers' trip likely had COVID 19 a/k/a "corona virus".

24. Throughout the cruise, Defendant failed to conduct adequate screening and/or evaluation to determine whether any of the cruise ship passengers had or were experiencing symptoms consistent with COVID 19 a/k/a "corona virus" despite having knowledge that there was a serious risk that its passengers could contract the virus while aboard its cruise ship.

25. At no time during or after the Vickers trip did Defendant warn or notify Plaintiff and/or decedent that there was a possibility that they could have contracted COVID 19 a/k/a "corona virus" while aboard the *Ecstasy*.

26. Shortly after Plaintiff Patricia Vickers and her husband, Jessie Vickers, deceased, completed their cruise, Jessie Vickers was diagnosed with COVID 19 a/k/a "corona virus".

27. Jessie Vickers, decedent, could not have contracted COVID 19 from any other source, in that immediately after the subject cruise, he observed proper social distancing guidelines, including but not limited to sheltering in place.

28. Jessie Vickers, decedent, subsequently died from acute respiratory failure and distress and other complicating factors of COVID 19 a/k/a "corona virus" on April 6,

2020.

29. In late April of 2020, a congressional committee announced it was opening an investigation into Defendant's actions in preparing for and responding to the COVID 19 a/k/a "corona virus" pandemic.

30. As a result of Defendant's actions and/or inactions, all of which were motivated by profit, Plaintiff's decedent died.

### III.   CAUSES OF ACTION

*Negligence*

31. Plaintiff renews and reaffirms each and every allegation set forth in Paragraphs 1 through 30 above.

32. Defendant had a legal duty to protect its passengers from dangers of which it was aware or should have been aware of.

33. Defendant breached its legal duty by failing to adequately clean and sanitize the Carnival Ecstasy prior to and during the Vickers trip.

34. Defendant breached its legal duty by failing to conduct adequate pre-boarding screens or evaluations to determine whether any of the cruise ship passengers and/or crew had or were experiencing symptoms consistent with COVID 19 a/k/a "corona virus".

35. Defendant breached its legal duty by failing to conduct any screens or evaluations during the duration of the subject cruise to determine whether any of the cruise ship passengers and/or crew had or were experiencing symptoms consistent with COVID 19 a/k/a "corona virus".

36. Defendant breached its legal duty by failing to warn or notify its

passengers before, during or after the conclusion of the subject cruise that they could be, may have been or were in fact exposed to COVID 19 a/k/a "corona virus" during their stay on Defendant's ship.

37. Defendant breached its legal duty by failing to implement any social distancing or shelter in place guidelines, protocols or mandates during the duration of the cruise.

38. Plaintiff sustained injuries and damages as a direct and proximate cause of Defendant's negligence.

*Vicarious Liability*

39. Plaintiff renews and reaffirms each and every allegation set forth in Paragraphs 1 through 38 above.

40. Defendant is responsible for the negligent acts of its agents, employees and/or personnel when done in furtherance of its business.

41. Defendant's agents, employees and/or personnel were acting in furtherance of company business at the time Plaintiff's decedent contracted COVID 19 a/k/a "corona virus". As such, Defendant is responsible, or vicariously liable, for their negligent acts.

42. Plaintiff sustained injuries and damages as a direct and proximate cause of Defendant's negligence.

## IV.   INJURIES AND DAMAGES

43. Plaintiff renews and reaffirms each and every allegation set forth in Paragraphs 1 through 42 above.

44. As a result of the aforesaid acts and/or omissions of Defendant, its agents,

employees and/or personnel, Plaintiff is entitled to recover for the full value of the life of Jessie Vickers.

45. As a direct and proximate result of the negligence of Defendant, its agents, employees and/or personnel, Jessie Vickers suffered pain and suffering prior to his death. Plaintiff sues Defendant for wrongful death, to recover an amount equal to the full value of the life of Jessie Vickers in accordance with O.C.G.A. § 51-4-2 as shown by all evidence.

46. Plaintiff prays to recover damages on behalf of the Estate for the personal injury and conscious pain and suffering inflicted upon Jessie Vickers by Defendant, together with the medical expenses, as well as funeral, burial, and other expenses incurred in the connection with the final rites and burial of Jessie Vickers.

47. Defendant's conduct, acts and/or omissions was intentional, willful, wanton, malicious, fraudulent, in bad faith and indicate an entire want of care which would raise the presumption of conscious indifference to consequences, entitling Plaintiff to recovery for punitive damages.

48. The actions of Defendant were undertaken in bad faith, Defendant has been stubbornly litigious, and has caused Plaintiff unnecessary trouble and expense.

49. Accordingly, pursuant to O.C.G.A. § 13-6-11, Plaintiff is entitled to an award of her expenses of litigation, including her reasonable attorney's fees. Said damages were directly, proximately, and solely caused by Defendant's actions.

WHEREFORE, Plaintiff prays as follows:

(a) That service be perfected upon Defendant as provided by law;

(b) That Plaintiff recover a judgment in the amount of $5,000,000.00;

(c) That Plaintiff recover against Defendant for the full value of the life of Jessie Vickers as will be shown by the evidence at the trial of this case;

(d) That Plaintiff recover against Defendant for the pain and suffering of Jessie Vickers prior to his death as well as for medical, funeral and burial expenses;

(e) That Plaintiff recover punitive damages and attorneys' fees and expenses;

(f) That the Court and Jury grant such other and further relief as they may deem just and proper; and

(f) That Plaintiff be granted a trial by jury.

This 15th day of June, 2020.

                                                    /s/ Ashleigh R. Madison
                                                    Ashleigh R. Madison
                                                    Georgia Bar No. 346027

Southeast Law, LLC
1703 Abercorn Street
Savannah, Georgia 31401
912.662.6612

                                                    /s/ Franklin D. Hayes
                                                    Franklin D. Hayes
                                                    Georgia Bar No. 339910

P.O. Box 2377
Douglas, Georgia 31534
Phone: 912.383.6132
Fax: 912.383.9634